# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
James and Manuela Sines

### DEFENDANTS
Darling Ingredients, Inc.

**(b)** County of Residence of First Listed Plaintiff: **Hudson County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Dallas City**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin S. Riechelson, Esq., Kamensky Cohen & Riechelson
194 S. Broad Street, Trenton, NJ 08608

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☒ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1322(d)(2)(a), 1322(d)(3), 1332(d)(4)

Brief description of cause:
Class Action - Odor/Trespass

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 10/18/2019
SIGNATURE OF ATTORNEY OF RECORD: /s/ K. Riechelson

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Kevin S. Riechelson
**KAMENSKY COHEN & RIECHELSON**
194 South Broad Street
Trenton, New Jersey, 08608
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@kcrlawfirm.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES and MANUELA SINES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DARLING INGREDIENTS INC.,<br><br>Defendant. | Civil Action No.<br><br><br>**COMPLAINT AND JURY DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

**INTRODUCTION**

1. Plaintiffs JAMES and MANUELA SINES, on behalf of themselves and all others similarly situated, bring this class action against Defendant DARLING INGREDIENTS INC. ("Defendant"), which owns and operates an animal rendering and grease recycling facility in the City of Newark, New Jersey.

2. Through its operation of the facility, Defendant released, and continues to release, noxious odors that invade Plaintiffs' property, causing property damage through nuisance, negligence, gross negligence, and trespass.

**PARTIES**

3. At all times relevant hereto, Plaintiffs James and Manuela Sines have been citizens

of New Jersey and have resided at 40 Willow Street, Hudson County, Jersey City, New Jersey.

4.   Defendant Darling Ingredients Inc. is a for-profit company incorporated in the State of Delaware and maintaining its principal place of business in the State of Texas.

5.   Defendant's facility is located in Essex County at 825 Wilson Avenue, Newark, New Jersey (hereinafter "the Facility").

6.   Upon information and belief, Defendant, including its predecessors and agents, constructed the Facility and exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

7.   This Court has original jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

8.   There are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs.

9.   Plaintiffs are citizens of New Jersey, and Defendant is a citizen of Delaware.

10.  Jurisdiction is proper in this Court pursuant to CAFA.

11.  Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

12.  The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the State of New Jersey because it regularly conducts substantial business in New Jersey through the ownership and operation of the Facility.

13.  Defendant at all relevant times hereto conducted substantial business in this District through the Facility, located in Essex County, and many of the acts, occurrences and/or

transactions alleged in this Complaint occurred in this District.

14. Venue in the United States District Court for the District of New Jersey is proper because Defendant transacts business within this District and a substantial portion of the events giving rise to the claims at issue in this Complaint occurred in this District.

## GENERAL ALLEGATIONS

15. Defendant operates an industrial animal rendering and grease recycling facility surrounded by residential properties.

16. Plaintiffs reside within 1.75 miles of the Facility's property boundary.

17. Plaintiffs' property has been and continues to be physically invaded by noxious odors.

18. The noxious odors which entered Plaintiffs' property originated from Defendant's Facility.

### *Defendant's Industrial Process*

19. Defendant's industrial operations at the Facility include processing animal carcasses, inedible animal byproducts, and used commercial grease into marketable ingredients for products including feed and fuel.

20. Defendant's operations include an industrial animal rendering process and a grease house.

21. Defendant's industrial operations are subject to parameters outlined in air pollution control permits issued by the State of New Jersey, Department of Environmental Protection.

22. For its animal rendering process, Defendant collects discarded animal byproducts, including fat, bones, feathers, and internal organs and entrails, from a wide range of commercial sources, such as butcher shops.

23. The animal waste byproducts are ground and heated to extract water and separate oils from animal tissue.

24. Protein is separated from the cooked material through industrial pressing, grinding, and sifting.

25. Defendant's animal rendering process also produces tallow, a hard, fatty substance, which is centrifuged and refined.

26. Defendant's animal rendering process results in marketable tallow, protein, and meal byproducts, which it sells commercially.

27. For Defendant's grease recycling process, Defendant collects used cooking oil from food service establishments.

28. The used cooking oil is heated, settled, and refined.

29. The grease house produces yellow grease, feed-grade animal fat, and oleo-chemical feedstocks, which it sells commercially.

30. Defendant's industrial process involves substantial pollutants, including highly noxious odors.

31. Defendant's industrial processes produce substantial quantities of wastewater and organic sludge, and Defendant is responsible for processing, treating, and disposing of the waste produced through its industrial processes.

32. Defendant is required to maintain and implement adequate odor mitigation and emission control processes and technology to minimize environmental impacts and prevent noxious odors from invading the ambient air outside of the Facility.

33. Defendant utilizes primarily, if not exclusively, "scrubbers" to eliminate odors from its industrial operations, including both the animal rendering and grease recycling.

### *Defendant's Noxious Fumes and Emissions*

34. The emissions from Defendant's manufacturing processes, including the consequent waste products, are noxious and highly odiferous.

35. Defendant has, on occasions too numerous to list herein, emitted unreasonably noxious odors into the ambient air outside of the Facility.

36. The noxious odors and emissions caused by the Facility have been and continue to be dispersed across all public and private land in the class area.

37. Plaintiffs' property has been, and continues to be, invaded by noxious odors and emissions from Defendant's Facility.

38. A properly operated and maintained animal rendering and grease recycling facility will not emit noxious odors into the ambient air as fugitive emissions.

39. Defendant is required to control its odorous emissions by, among other things, utilizing adequate odor mitigation and control technologies at the Facility; adequately operating and maintaining its odor mitigation and control technologies to prevent off-site odors; adequately and/or timely disposing of the waste, wastewater, and sludge produced through its industrial processes to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

40. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and properties of Plaintiffs and the putative Class.

### *Impacts of Defendant's Actions and Omissions on Plaintiffs and the Putative Class*

41. The Facility and its odorous emissions have been the subject of frequent complaints

from residents in nearby residential areas.

42. More than 50 households have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's Facility.

43. Plaintiffs James and Manuela Sines reported to Plaintiffs' Counsel that they experience odors from Defendant's Facility that smell like "rotting animal carcasses."

44. Plaintiff Manuela Sines, who is a stay-at-home mother, "could not take her daily walk" on days when the odor was present because it made her "feel like she was going to vomit."

45. The Sines household further reported that "[w]e would have to close our windows when the [odor] filled our home."

46. Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have damaged their neighboring properties.

    a. On October 6, 2019, putative class member Jessica Morelli from Jersey City reported that she experiences "[h]orrible odors. Smells like burning dead animals, burning garbage, sometimes burning chemical odors." She further reported that "we have a terrace directly on the water. Once the odor starts wafting over the water, we have to go inside, shut the windows + put the A/C on. We cannot enjoy our home. My husband wants to move!"

    b. On October 7, 2019, putative class member Donna Bock from Jersey City reported that "[t]he smell is something so foul it cannot [be] described. Disgusting is too kind a word." She further reported that, "[i]n nice weather I have to close my windows and sliding patio door, I have had to leave our community pool because the smell is so very, very strong. You feel like it attaches to your clothes."

    c. On October 7, 2019, putative class member Halina Partyka from Jersey City reported that "[t]he odors are terrible" and "[w]indow can't be open. Even with close[d] windows smell inside is awful. I can't have guest because of the smell. I can not eat my meals, it looks like everything smells."

    d. On October 5, 2019, putative class member Sharon Morell from Jersey City reported that that she experiences "[s]mells like rotting bodies, meat." She further reported that "[o]n a nice cool day when you want to leave windows

6

open you must close them. Odor permeates the home. Also, cannot remain outside for long."

e. On October 6, 2019, putative class member Latrenda Zabaleta from Jersey City reported that her household experiences an odor of "[r]otten meat mixed with chemical odor. It is so offensive you do not even want to open your mouth." She further reported that "I keep my windows closed [at] all times. I cannot enjoy my backyard and pool. My husband, myself, and my 2 year old often stay [at] a relatives home to avoid the smell. I do not invite family or friends over."

f. On October 9, 2019, putative class member Jennell Jones from Jersey City reported that she experiences an odor she described as "a combination of rotten flesh and chemicals." She further reported that "[t]he smell comes and it prevents me from sitting outside, opening my windows and embarrasses me when I have company. I worry about the impact to my health and the resale of my property."

47. Defendant's well documented pattern of failing to control its emissions is further demonstrated by the following:

a. Numerous and repeated resident complaints to Defendant and the New Jersey Department of Environmental Protection ("NJDEP") Hotline directly attributing noxious odors to Defendant's Facility.

b. Numerous media reports regarding Defendant's "putrid" odors and emissions.

c. The NJDEP verified at least five odor complaints that led to Notices of Violation to Defendant for causing the off-site odors. The known verified odor complaints occurred on July 24, 2018, March 13, 2019, July 11, 2019, August 6, 2019, and August 15, 2019.

d. The NJDEP determined that Defendant committed 320 individual permit violations from September 1, 2018 to June 8, 2019. These violations were based on separate, verified measurements and observations of Defendant's operations and revealed that:

   i. Defendant operated the rendering process packed tower scrubber 1 outside of the permitted range at least 93 times.

   ii. Defendant operated the rendering process packed tower scrubber 2 outside of the permitted range at least 51 times.

   iii. Defendant operated the rendering process packed tower scrubber 3

        outside of the permitted range at least 100 times.

     iv. Defendant operated the grease house scrubber outside of the permitted range 64 times.

  e. An August 23, 2019 inspection by the NJDEP revealed additional permit violations relating to Defendant's operation of its scrubbers for both the rendering process and the grease house.

  f. A September 10, 2019 inspection by the NJDEP revealed additional permit violations relating to Defendant's operation of both the rendering process and the grease house.

48. Defendant's Facility has emitted, and continues to emit, objectionable odors that are detectable outside the bounds of its property.

49. The Facility has emitted objectionable odors that have caused negative impacts to its neighbors, including Plaintiffs and the putative class, and their property.

50. Plaintiffs and members of the putative class suffer from physical discomfort because of Defendant's noxious odors, including but not limited to nausea, eye irritation, nasal irritation, and headaches.

51. The foul odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

52. The invasion of Plaintiff's property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

53. The Class Area is home to a wide range of recreational and commercial activities, including but not limited to manufacturing, retail, dining, trade, athletics, education, and lodging.

54. Plaintiffs and the Class are a limited subset of individuals in Essex and Hudson Counties and the Class Area who are the owners and/or holders of private, residential property

interests. *See, infra,* at ¶ 58.

55.    Members of the public, including but not limited to businesses, employees, commuters, pedestrians, tourists, visitors, minors, customers, clients, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

56.    As explained in ¶47, Defendant has long known that its operation of the Facility was causing unreasonable off-site impacts on its residential neighbors; yet Defendant knowingly failed to take reasonable steps to abate the harm to its neighbors and their property.

57.    Defendant negligently, unreasonably, knowingly, intentionally, recklessly, willfully, and grossly failed to properly construct, operate, repair, and/or maintain the Facility, thereby causing the invasion of Plaintiff's property by noxious odors on unusually frequent, intermittent and ongoing reoccurring occasions.

## CLASS ALLEGATIONS

### A.    Definition of the Class

58.    Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one and three-quarter (1.75) miles of the Facility's property boundary.**

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

59. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

   a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

   b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

   c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

   d. The claims of the representative parties are typical of the claims of the Class;

   e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

   f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

   g. There are no unusual difficulties foreseen in the management of this class action; and

   h. Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

60. The approximated number of residential households within the Class Area is over 10,000.

61. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

**C. Commonality**

62. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

    a.    whether and how Defendant negligently, unreasonably, knowingly, intentionally, recklessly, and grossly failed to construct, operate, and maintain the Facility and its operations;

    b.    whether Defendant owed any duties to Plaintiffs;

    c.    which duties Defendant owed to Plaintiffs;

    d.    which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, operation, and maintenance of its animal rendering and grease recycling facility and their respective operations;

    e.    whether Defendant met its standard of care with respect to its operation, construct, and maintenance of the Facility and its operations;

    f.    whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

    g.    whether it was reasonably foreseeable that Defendant's failure to properly construct, operate, and maintain the Facility and its operations would result in an invasion of Plaintiffs' property interests;

    h.    whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

    i.    the proper measure of damages incurred by Plaintiffs and the Class.

### D.    Typicality

63.    Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

64.    The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, operate, and maintain the Facility and its operations.

65. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their property.

### E. Adequacy of Representation

66. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

67. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

### F. Class Treatment Is the Superior Method of Adjudication

68. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   d. The proposed class action is manageable.

69. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party

opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

70. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## I. CAUSE OF ACTION ONE

### NUISANCE

71. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

72. Plaintiffs utilized their property as a residence and reside within the Class Area.

73. The noxious odors which entered Plaintiffs' property originated from Defendant's Facility, which was in close proximity.

74. By failing to reasonably construct, operate, and/or maintain its Facility, Defendant has caused an invasion of Plaintiffs' property by noxious odors on unusually frequent occasions that are too numerous to individually list herein.

75. The noxious odors invading Plaintiffs' property are indecent and offensive to Plaintiffs, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiffs' property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

76. Defendant knew that it was emitting noxious odors onto neighboring properties, yet failed to take reasonably adequate steps to abate the nuisance.

77. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public spaces by emitting noxious pollutants into the ambient air.

78.     Defendant owed, and continues to owe, a duty to Plaintiffs and the Class to control, prevent, and abate emissions that unreasonably interfere with Plaintiffs' private property interests.

79.     As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein.

80.     By causing noxious odors that physically invaded Plaintiffs' property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiffs' use and enjoyment of their property on unusually frequent occasions too numerous to mention individually.

81.     Such substantial and unreasonable interference includes, but is not limited to:

a.    loss of use and ability to enjoy the outside areas of Plaintiffs' property or to open windows due to the presence of noxious odors;

b.    decrease in the value of Plaintiffs' property; and

c.    annoyance, inconvenience, and physical discomfort, including but not limited to, being woken up in the middle of the night by noxious odors, the physical discomfort and accompanying symptoms of enduring noxious odors, and the inability to invite guests to Plaintiffs' residence due to the embarrassment and annoyance of the noxious odors invade Plaintiffs' property.

82.     Separate and distinct from the property damage incurred by Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

83.     Plaintiffs suffered and continue to suffer special harm relating to the use and enjoyment of their land and property, and decreased property values—damages of a different kind than those suffered by the public at-large.

84.     Plaintiffs did not consent to noxious odors entering upon their property.

85.     Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiffs and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure

substantial loss in the value of their properties.

86. Defendant's substantial and unreasonable interferences with Plaintiffs' property rights constitute a nuisance for which Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## II. CAUSE OF ACTION TWO

### NEGLIGENCE AND GROSS NEGLIGENCE

87. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

88. On occasions too numerous to mention, Defendant negligently and improperly constructed, operated, and/or maintained its Facility and its operations, causing fugitive emissions to escape into the ambient air and invade Plaintiffs' home, land, and property.

89. Defendant owed Plaintiffs, as neighboring landowners, a duty of care with regard to its operation and maintenance of the Facility.

90. As a direct, proximate, and foreseeable result of Defendant's negligence in operating and maintaining the Facility, Plaintiffs' property, on occasions too numerous to mention, was physically invaded by noxious odors.

91. As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiffs' property and diminution in the value of Plaintiffs' property.

92. By failing to properly operate and/or maintain its Facility, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade Plaintiffs' property.

93. By failing to maintain and/or operate its Facility, Defendant has caused the invasion of Plaintiffs' property by noxious odors.

94. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained and/or operated its Facility and knew or should have known upon reasonable inspection that such actions would—and did—cause Plaintiffs' property to be invaded by noxious odors.

95. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residences have been and continue to be physically invaded by noxious odors.

96. After learning about its noxious emissions, Defendant failed to take reasonably adequate steps to abate the conditions causing damages to Plaintiffs' property.

97. Defendant's conduct in knowingly allowing conditions to exist, which caused noxious odors to physically invade Plaintiffs' property, constitutes gross negligence as it demonstrates a conscious disregard for Plaintiffs' rights.

98. There was a great probability that substantial harm would result from Defendant's acts and omissions in operating and maintaining the Facility.

99. Defendant's gross negligence was willful and made with a conscious disregard for the rights and safety of Plaintiffs, which entitles Plaintiff to an award of compensatory, exemplary, and punitive relief.

### III. CAUSE OF ACTION THREE

### TRESPASS

Plaintiffs' incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

100. Defendant negligently failed to maintain and/or operate the Facility, which caused

noxious odors to be emitted from Defendant's property.

101. The noxious odors set in motion by Defendant's industrial operations physically invaded and entered Plaintiffs' property and the airspace above the property on occasions too numerous to identify independently.

102. Plaintiffs did not consent to the physical invasion of their property and its airspace by noxious odors.

103. It was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in the invasion of neighboring property, including Plaintiffs'.

104. The noxious odors that entered, and continue to enter, Plaintiffs' property interfere with Plaintiffs' interests in the exclusive possession, use, and enjoyment of the property.

105. Defendant's noxious odors have caused actual and substantial damage to the property and the airspace above, including an interference with Plaintiffs' use and enjoyment of their property.

106. The noxious odors emitted by Defendant also caused Plaintiffs harm through a diminution in the value of their property.

107. Defendant's actions resulting in the trespass upon Plaintiffs' land and/or the airspace above were and continue to be wrongful, negligent, knowing, intentional, and made with a conscious disregard for the rights of Plaintiffs and the harm caused thereto, entitling Plaintiffs to compensatory and punitive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B.  Designation of Plaintiffs as representatives of the proposed Class and designation of his counsel as Class Counsel;

C.  Judgment in favor of Plaintiffs and the Class Members and against Defendant;

D.  An award, to Plaintiffs and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E.  An Order holding that the physical entrance of the aforementioned noxious odors upon Plaintiffs' property and the airspace above constituted a nuisance and trespass;

F.  An award to Plaintiffs and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G.  Such further relief both general and specific as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury on all issues raised in this Complaint.

Dated: October 18, 2019

Respectfully submitted,

s/ K Riechelson

Kevin S. Riechelson
KAMENSKY COHEN & RIECHELSON
194 South Broad Street
Trenton, New Jersey, 08608
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@kcrlawfirm.com

Steven D. Liddle*
Laura Sheets*
Matthew Z. Robb*
*Pro Hac Vice Motions to be Submitted
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com

18

lsheets@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiffs and the putative Class*